BETH CREIGHTON, OSB #972440
E-mail: beth@civilrightspdx.com
KRISTIN R. BELL, OSB #235024
E-mail: kristin@civilrightspdx.com
CREIGHTON & ROSE, PC
Strowbridge Building, Suite 300
735 SW First Avenue
Portland, Oregon 97204-3316
Phone: (503) 221-1792
Fax: (503) 223-1516

PAUL J. SHARMAN (*pro hac vice* to be filed)
Georgia State Bar No. 227207
Email: paul@sharman-law.com
The Sharman Law Firm LLC
11175 Cicero Drive, Suite 100
Alpharetta, GA 30022
Phone: (678) 242-5297
Fax: (678) 802-2129

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
### PORTLAND DIVISION

| | |
|---|---|
| VICTORIA HALTER individually, on behalf of the Providence Health & Services 401(k) Savings Plan and on behalf of all similarly situated participants and beneficiaries of the Plan,<br><br>　　Plaintiffs,<br><br>v.<br><br>PROVIDENCE HEALTH & SERVICES; THE ADMINISTRATIVE COMMITTEE OF THE PROVIDENCE HEALTH & SERVICES 401(k) SAVINGS PLAN; John and Jane Does 1-30 in their capacities as members of the Administrative Committee,<br><br>　　Defendants. | CIVIL ACTION FILE NO: |

Page | 1   COMPLAINT

## CLASS ACTION COMPLAINT

### I. NATURE OF ACTION

1.  Plaintiff Victoria Halter, individually, as a representative of the Class described below, and on behalf of the Providence Health & Services 401(k) Plan (the "Plan"), bring this action under 29 U.S.C. § 1132 against Defendants Providence Health & Services ("Providence"), the Administrative Committee of the Plan (the "Committee"), and John Does 1-30 in their capacities as members of the Committee (collectively, "Defendants"), to remedy Defendants' breaches of fiduciary duties and other violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq.

2.  As fiduciaries to the Plan, Defendants were obligated at all times to act prudently and for the exclusive benefit of participants and beneficiaries. This Defendants did not do.

3.  Plaintiffs bring this action to obtain the relief provided under ERISA § 409, 29 U.S.C. § 1109, for losses suffered by the Plan resulting from the Defendants' fiduciary breaches and prohibited transactions described below, and for other appropriate equitable and injunctive relief under ERISA § 502(a)(3), 29 U.S.C. U.S.C. § 1102(a)(3).

### II. JURISDICTION AND VENUE

4.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and ERISA, 29 U.S.C. § 1132(a)(2), (a)(3) and (c)(1) for which federal district courts have exclusive jurisdiction under 29 U.S.C. § 1132(e)(1).

5.  Venue is proper in this judicial district pursuant to ERISA Section 502(e), 29 U.S.C. § 1132(e) and 28 U.S.C. § 1391, because Plaintiff lives in this District and worked for Defendant Providence in this District and a substantial part of the events or omissions giving rise to the claims occurred here.

### III. THE PARTIES

6. At all relevant times, Plaintiff Victoria Halter ("Halter"), by virtue of her employment with Providence and participation in the Plan, is or may become eligible to receive additional benefits under the Plan as a result of Defendants' breaches and ERISA violations. Thus, Halter is a participant as defined by ERISA § 3(7), 29 U.S.C. § 1002(7).

7. The Providence Plan is a defined contribution, individual account, employee pension benefit plan under 29 U.S.C. § 1002(2)(A) and § 1002(34) and is subject to the provisions of ERISA pursuant to 29 U.S.C. § 1003(a).

8. Defendant Providence is a national, not-for-profit Catholic health system comprising fifty-one hospitals, over 1,000 clinics, and many other health and educational services employing over 124,000 serving patients in communities across seven Western states – Alaska, California, Montana, New Mexico, Oregon, Texas, and Washington.

9. At all relevant times, Defendant Providence, a non-profit Catholic healthcare organization, is the sponsor of the Plan per ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B); a party in interest under ERISA § 3(14)(C), 29 U.S.C. § 1002(14)(C); and a Plan fiduciary under ERISA § 3(21)(A), 29 U.S.C. § 1002(2)(A), to the extent that it appointed members of the Committee and otherwise exercised discretion over the administration and management of the Plan and/or control of Plan assets.

10. At all relevant times, Defendant the Committee was the Plan administrator under ERISA § 3(16), 29 U.S.C. § 1002(16); a party in interest under ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A); and Plan fiduciary under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), to the extent that it had or exercised discretion over the administration or management of the Plan and/or control of Plan assets.

11. At all relevant times, Defendants John Does 1-30, as members of the Committee, were parties-in-interest under ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A), and fiduciaries of the Plan under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), to the extent that they had or exercised discretionary authority respecting the administration or management of the Plan, and/or control of Plan assets. Plaintiffs will seek leave to amend the Complaint to name each of these John Does once they ascertain their identities in discovery. The Committee and John Does 1-30 will be referred to collectively as the "Committee."

### IV. FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

12. The Plan is a multiple employer defined contribution 401(k) plan sponsored and administered by Providence Health & Services ("Company") and intended to provide benefits to eligible employees of participating employers. The Plan is subject to the provisions of the Employee Retirement Income Security Act of 1974 (ERISA). Company is the Sponsor of the Plan under ERISA.

13. Under ERISA, anyone who exercises discretion or control over plan assets, including the Plan Sponsor, is a fiduciary (hereafter "Plan Fiduciary" or Plan Fiduciaries").

14. In accordance with 29 U.S.C. § 1103(a), the assets of the Plan are held in a trust fund.

15. As an individual account, defined contribution retirement plan, the Plan "provides for an individual account for each participant and for benefits solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeiture of accounts of other participants which may be allocated to such participant's account." 29 U.S.C. § 1002(34).

16. Under the terms of the Plan document, the Plan Fiduciaries were required to, among other things, act "for the exclusive purpose of providing benefits to Participants and their beneficiaries and defraying reasonable expenses of administering the Plan." The Plan document refers to the "expenses of administering the Plan" as "Plan expenses" (hereafter "Plan Expenses").

17. Throughout the Class Period, the Plan has been funded by a combination of wage withholdings by Plan Participants and Company matching contributions, among other sources, each of which is deposited into the Plan's trust fund and allocated to individual Participant accounts.

18. Throughout the Class Period, the terms of the Plan require Company to make matching contributions to the Plan based on each Participant's contributions.

19. Company must pay all matching contributions that have accrued throughout a calendar year to the Plan trustee within a reasonable period of time after the end of the prior calendar year.

20. Upon their deposit into the Plan's trust fund, all Participant contributions and Company contributions become assets of the Plan.

21. Under the terms of the Plan, Participants are immediately vested in their own contributions, as well as any actual earnings thereon and vested in Company matching contributions and any actual earnings on such amounts based on various schedules dependent on their employer group typically ranging from four to six years before being fully vested.

22. To the extent a Participant is not 100% vested upon termination of employment, the Participant forfeits the value of Company contributions (hereafter "Forfeited Plan Assets") in his or her account on the earlier of the date the Participant takes a distribution of his or her vested

interest in the Plan or the date the Participant incurs a five-consecutive-year break in vesting service (within the meaning of the plan document).

23. Under the terms of the Plan document, the Plan Fiduciaries do not have discretion related to the use of Forfeited Plan Assets that were forfeited by Plan Participants. Rather, the Plan document specifically sets forth how Forfeited Plan Assets shall be used as follows:

(a) All amounts that are forfeited in accordance with the terms of the Plan, whether temporarily or permanently, shall be credited to a Forfeiture Account under the Plan. Amounts held in a Forfeiture Account shall be applied as follows:

(1) First, to pay Plan expenses not paid by Providence, to the extent permitted under applicable Department of Labor regulations and guidance;

(2) To the extent amounts remain in the Forfeiture Account after the application of subsection (1) above, to restore Accounts in accordance with Section 7.3 or Accounts of lost payees in accordance with Section 16.6; and

(3) To the extent amounts remain in the Forfeiture Account after the application of subsections (1) and (2) above, to offset any employer contributions to be made to the Plan.

24. Despite the clear requirement under the terms of the Plan document that the Forfeited Plan Assets were required first "to pay Plan expenses . . .", the Plan Fiduciaries instead ***did not first*** use the Forfeited Plan Assets to pay Plan Expenses.

25. Contrary to the explicit terms of the Plan document, throughout the Class Period the Plan Fiduciaries caused Plan Participants to pay significant portions of the Plan Expenses contrary to the express provisions of the plan document through deductions from the accounts of Plan Participants.

26. Additionally, under ERISA, when making the decision regarding the use of Forfeited Plan Assets, the Plan Fiduciaries have been and are required by 29 U.S. Code § 1104 to discharge [their] duties with respect to a plan solely in the interest of the participants and

beneficiaries **and for the exclusive purpose of providing benefits to participants** and their beneficiaries **and defraying reasonable expenses** of administering the plan.

27. During 2018, a minimum of $4,149,035 in Forfeited Plan Assets was available to the Plan Fiduciaries to use to pay Plan Expenses.

28. During 2018, instead of using the Forfeited Plan Assets to reduce plan expenses as required by the express terms of the Plan Document, the Plan Fiduciaries caused Plan Participants to pay a minimum of $433,159 in Plan Expenses through deductions from the accounts of Plan Participants and also caused Plan Participants to pay other Plan Expenses indirectly.

29. During 2018 the Plan Fiduciaries, contrary to the express terms of the Plan Document, exercised discretion over, and control of, plan assets when deciding to use $4,149,035 in Forfeited Plan Assets to, among other things, offset Company contributions instead of paying all Plan Expenses with the Forfeited Plan Assets.

30. Moreover, on December 31, 2018 unallocated Forfeited Plan Assets were $501,878.

31. During 2018, the Plan Fiduciaries exercised discretion over, and control of, plan assets by failing to use unallocated Forfeited Plan Assets of $501,878 in a timely fashion for the exclusive benefit of Plan Participants to avoid having unallocated in Forfeited Plan Assets of $501,878 on December 31, 2018.

32. During 2019, a minimum of $5,252,200 in Forfeited Plan Assets was available to the Plan Fiduciaries to use to pay Plan Expenses.

33. During 2019, instead of using the Forfeited Plan Assets to reduce plan expenses as required by the express terms of the Plan Document, the Plan Fiduciaries caused Plan

Participants to pay a minimum of $664,966 in Plan Expenses through deductions from the accounts of Plan Participants and also caused Plan Participants to pay other Plan Expenses paid indirectly.

34. During 2019 the Plan Fiduciaries, contrary to the express terms of the Plan Document, exercised discretion over, and control of, plan assets when deciding to use $5,252,200 in Forfeited Plan Assets to, among other things, offset Company contributions instead of paying all Plan Expenses with the Forfeited Plan Assets.

35. Moreover, on December 31, 2019, unallocated Forfeited Plan Assets were $487,787.

36. During 2019, the Plan Fiduciaries exercised discretion over, and control of, plan assets by failing to use unallocated Forfeited Plan Assets of $487,787 in a timely fashion for the exclusive benefit of Plan Participants to avoid having unallocated Forfeited Plan Assets of $487,787 on December 31, 2019.

37. During 2020, a minimum of $5,590,362 in Forfeited Plan Assets was available to the Plan Fiduciaries to use to pay Plan Expenses.

38. During 2020, instead of using the Forfeited Plan Assets to reduce Plan Expenses as required by the express terms of the Plan Document, the Plan Fiduciaries caused Plan Participants to pay a minimum of $3,549,572 in Plan Expenses through deductions from the accounts of Plan Participants and also caused Plan Participants to pay other Plan Expenses indirectly.

39. During 2020 the Plan Fiduciaries, contrary to the express terms of the Plan Document, exercised discretion over, and control of, plan assets when deciding to use

$5,590,362 in Forfeited Plan Assets to, among other things, offset Company contributions instead of paying all Plan Expenses with the Forfeited Plan Assets.

40. Moreover, on December 31, 2020, unallocated Forfeited Plan Assets were $1,187,685.

41. During 2020, the Plan Fiduciaries exercised discretion over, and control of, plan assets by failing to use unallocated Forfeited Plan Assets of $1,187,685 in a timely fashion for the exclusive benefit of Plan Participants to avoid having unallocated Forfeited Plan Assets of $1,187,685 on December 31, 2020.

42. During 2021, a minimum of $10,344,820 in Forfeited Plan Assets was available to the Plan Fiduciaries to use to pay Plan Expenses.

43. During 2021, instead of using the Forfeited Plan Assets to reduce plan expenses as required by the express terms of the Plan Document, the Plan Fiduciaries caused Plan Participants to pay a minimum of $3,538,220 in Plan Expenses through deductions from the accounts of Plan Participants and also caused Plan Participants to pay other Plan Expenses indirectly.

44. During 2021 the Plan Fiduciaries, contrary to the express terms of the Plan Document, exercised discretion over, and control of, plan assets when deciding to use $10,344,820 in Forfeited Plan Assets to, among other things, offset Company contributions instead of paying all Plan Expenses with the Forfeited Plan Assets.

45. Moreover, on December 31, 2021, unallocated Forfeited Plan Assets were $630,032.

46. During 2021, the Plan Fiduciaries exercised discretion over, and control of, plan assets by failing to use unallocated Forfeited Plan Assets of $630,032 in a timely fashion for the

exclusive benefit of Plan Participants to avoid having unallocated Forfeited Plan Assets of $630,032 on December 31, 2021.

47. During 2022, a minimum of $63,604,261 in Forfeited Plan Assets was available to the Plan Fiduciaries to use to pay Plan Expenses.

48. During 2022, instead of using the Forfeited Plan Assets to reduce Plan Expenses as required by the express terms of the Plan Document, the Plan Fiduciaries caused Plan Participants to pay a minimum of $5,863,661 in Plan Expenses through deductions from the accounts of Plan Participants and also caused Plan Participants to pay other Plan Expenses indirectly.

49. During 2022 the Plan Fiduciaries, contrary to the express terms of the Plan Document, exercised discretion over, and control of, plan assets when deciding to use $63,604,261 in Forfeited Plan Assets to, among other things, offset Company contributions instead of paying all Plan Expenses with the Forfeited Plan Assets.

50. Moreover, on December 31, 2022, unallocated Forfeited Plan Assets were $1,112,450.

51. During 2022, the Plan Fiduciaries exercised discretion over, and control of, plan assets by failing to use unallocated Forfeited Plan Assets of $1,112,450 in a timely fashion for the exclusive benefit of Plan Participants to avoid having unallocated Forfeited Plan Assets of $1,112,450 on December 31, 2022.

52. Under the terms of the Plan and the provisions of ERISA, throughout the Class Period the Defendants (Plan Fiduciaries) improperly, disloyally, and imprudently exercised discretion over, and control of, plan assets when directing the use of Forfeited Plan Assets.

53. As described in detail above, throughout the Class Period, the Plan Fiduciaries' improperly, disloyally, and imprudently exercised discretion when deciding to use Forfeited Plan Assets to reduce employer contributions.

54. Additionally, that improper, disloyal, and imprudent exercise of discretion was in the best interest of Company because that option decreased Company's own contribution costs.

55. Similarly, as described in detail above, throughout the Class Period, the Plan Fiduciaries' decisions to use Forfeited Plan Assets to reduce employer contributions instead of paying Plan Expenses reduced the value of Plan Assets and the accounts of Plan Participants and the benefits available to Plan Participants.

56. As described in detail above, throughout the Class Period, the Plan Fiduciaries exercised discretion over, and control of, plan assets when directing the use of Participants' accounts to pay Plan Expenses to service providers.

57. There are no facts or circumstances throughout the Class Period that make the Plan Fiduciaries' decisions to use Forfeited Plan Assets to reduce Company contributions consistent with discharging their duties with respect to the Plan *solely* in the interest of the participants and beneficiaries **and for the exclusive purpose of providing benefits to participants** and their beneficiaries **and defraying reasonable expenses** of administering the plan.

58. As described in detail above, throughout the Class Period, the Plan Fiduciaries improperly, disloyally and imprudently exercised discretion over, and control of, plan assets and consistently and reflexively chose to use the Forfeited Plan Assets for the Company's interest, to the detriment of the Plan and Plan Participants, by allocating Forfeited Plan Assets toward reducing the Company's outstanding and unpaid contributions owing to the Plan.

59. All else being equal, had the Plan Fiduciaries decided throughout the Class period to use Forfeited Plan Assets to defray Plan Expenses or allocated the Forfeited Plan Assets back to eligible participants, the value of the Plan and the value of the accounts of the Plan participants would have been greater thereby providing greater retirement benefits to Plan Participants.

## FIRST CLAIM

## BREACH OF THE DUTY OF LOYALTY

## (29 U.S.C. 1104(a)(1)(A))

60. Plaintiff re-alleges and incorporates in Count 1 paragraphs 1-59 of the Complaint.

61. When exercising discretion and control over Forfeited Plan Assets and using them to reduce Company contributions, the Plan Fiduciaries considered the best interest of Company as opposed to Plan participants, in violation of ERISA.

62. Alternatively, when improperly exercising discretion and control over Forfeited Plan Assets and failing to use them to defray the reasonable costs of administering the Plan, the Plan Fiduciaries considered the best interests of Company, as opposed to Plan Participants, in violation of the explicit terms of the Plan document as well as ERISA.

63. When exercising control over Forfeited Plan Assets, the Plan Fiduciaries failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, when those aims are to act *solely* in the interest of the Plan Participants and beneficiaries **and for the exclusive purpose of providing benefits to Plan Participants** and their beneficiaries **and defraying reasonable expenses** of administering the plan, in violation of ERISA.

64. As a direct and proximate result of Defendants' fiduciary breaches described herein, the Plan suffered injury and loss for which Defendants are personally liable and are subject to appropriate equitable relief, pursuant to 29 U.S.C. § 1109, including, without limitation, the disgorgement of all ill-gotten profits to Defendants resulting from the breach of their duty of loyalty.

65. Each Defendant knowingly participated in the breach of the other Defendants, knowing that such acts were a breach, enabled other Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties, knew of the breach by the other Defendants and failed to make any reasonable effort under the circumstances to remedy the breach. Thus, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

66. Plaintiffs have suffered Losses as a direct result of the Defendants' breach of their duty of loyalty.

## SECOND CLAIM

### BREACH OF THE DUTY OF PRUDENCE

(29 U.S.C. 1104(a)(1)(B))

67. Plaintiff re-alleges and incorporates in Count 2 paragraphs 1-59 of the Complaint.

68. When exercising control over Forfeited Plan Assets and using them to reduce Company contributions, the Plan Fiduciaries failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, when those aims are to act *solely* in the interest of the Plan Participants and beneficiaries **and for the exclusive purpose of providing benefits to Plan Participants** and

their beneficiaries **and defraying reasonable expenses** of administering the plan, in violation of ERISA.

69.     Alternatively, when improperly exercising discretion and control over Forfeited Plan Assets, and failing to use them first to defray the reasonable costs of administering the Plan, contrary to the explicit terms of the Plan document, the Plan Fiduciaries failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, when those aims are to act *solely* in the interest of the Plan Participants and beneficiaries **and for the exclusive purpose of providing benefits to Plan Participants** and their beneficiaries **and defraying reasonable expenses** of administering the plan, in violation of ERISA.

70.     When deciding how to allocate Forfeited Plan Assets, Defendants utilized an imprudent and flawed process. Despite the conflict of interest presented by alternatives under both ERISA and the Plan document, Defendants failed to undertake any reasoned and impartial decision-making process to determine whether using the Forfeited Plan Assets to reduce the Company's own contribution expenses, as opposed paying Plan Expenses or for other purposes allowable under ERISA, was in the best interest of the Plan's participants or was prudent, and failed to *solely* consider which alternative would promote the **exclusive purpose of providing benefits to Plan Participants** and their beneficiaries **and defraying reasonable expenses** of administering the plan, in violation of ERISA.

71.     By refusing to use Forfeited Plan Assets to eliminate Plan Expenses that were instead charged to participant accounts, and instead deciding to use these Plan assets to reduce the Company's own contribution expenses, Defendants imprudently caused the value of the

Plan's assets to decrease by causing participants to incur expense deductions from their individual accounts that would otherwise have been covered in whole or in part by utilizing the Forfeited Plan Assets to pay Plan expenses.

72. Had the Plaintiffs conformed with the minimum standard of care required under ERISA, the Defendants (Plan Fiduciaries) would not have used Forfeited Plan Assets to reduce Company contributions.

73. Alternatively, had the Plaintiffs conformed with the minimum standard of care required under ERISA, they would have used Forfeited Plan Assets to defray reasonable expenses of administering the Plan.

74. Plaintiffs have suffered Losses as a direct result of the Defendants' breach of their duty of prudence.

## THIRD CLAIM

## SELF DEALING / PROHIBITED TRANSACTIONS

## (29 U.S.C. 1106(B)(1))

75. Plaintiff re-alleges and incorporates in Count 3 paragraphs 1-59 of the Complaint.

76. 29 U.S.C. § 1106(b) provides that "[a] fiduciary with respect to a plan shall not," among other things, "deal with the assets of the plan in his own interest or for his own account."

77. Defendants violated this prohibition in their management and control of Forfeited Plan Assets. By allocating these Forfeited Plan Assets toward offsetting the Company's outstanding and unpaid matching contributions owing to the Plan, thereby saving the Company millions of dollars in contribution expenses, Defendants dealt with the assets of the Plan in their own interest and for their own account.

78. As a result of this prohibited conduct, Defendants caused the Plan to suffer losses in the amount of the Plan assets that were substituted for employer matching contributions and the lost investment returns on those assets.

79. Each Defendant is personally liable under 29 U.S.C. § 1109(a) to make good to the Plan any losses to the Plan resulting from the prohibited conduct alleged in this claim, to restore to the Plan all assets and profits obtained through the use of Plan assets and is subject to other equitable or remedial relief as appropriate.

## FOURTH CLAIM

## PROHIBITED TRANSACTIONS

## (29 U.S.C. 1106(a)(1))

80. Plaintiff re-alleges and incorporates in Count 4 paragraphs 1-59 of the Complaint.

81. 29 U.S.C. § 1106(a)(1) provides that "[a] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . exchange . . . of any property between the plan and a party in interest . . . or use by or for the benefit of a party in interest, of any assets of the plan."

82. Providence and the Committee are parties in interest, as that term is defined under 29 U.S.C. §1002 (14), because they are Plan fiduciaries and because Providence is the employer of Plan participants.

83. By electing to use Forfeited Plan Assets in the Plan as a substitute for future employer contributions to the Plan, and thereby saving the Company millions of dollars in contribution expenses, Defendants caused the Plan to engage in transactions that constituted a direct or indirect exchange of existing Plan assets for future employer contributions and/or a use of Plan assets by or for the benefit of a party in interest.

84. As a result of these prohibited transactions, Defendants caused the Plan to suffer losses in the amount of the Plan assets that were substituted for future employer contributions and the lost investment returns on those assets.

85. Each Defendant is personally liable under 29 U.S.C. § 1109(a) to make good to the Plan any losses to the Plan resulting from the prohibited transactions alleged in this claim, to reverse and/or correct the prohibited transactions, to restore to the Plan all assets and profits obtained through the use of Plan assets and is subject to other equitable or remedial relief as appropriate.

## PRAYER FOR RELIEF

For these reasons, Plaintiff, on behalf of the Plan and all similarly situated Plan participants and beneficiaries, respectfully requests that the Court:

a) find and declare that Defendants have breached their fiduciary duties and engaged in prohibited conduct and transactions as described above;

b) find and adjudge that Defendants are personally liable to make good to the Plan all losses to the Plan resulting from each violation of ERISA described above, and to otherwise restore the Plan to the position it would have occupied but for these violations;

c) order the disgorgement of all assets and profits secured by Defendants as a result of each violation of ERISA described above;

d) determine the method by which Plan losses under 29 U.S.C. §1109 should be calculated;

e) order Defendants to provide all accounting necessary to determine the amounts Defendants must make good to the Plan under 29 U.S.C. § 1109(a);

f) remove the fiduciaries who have breached their fiduciary duties and enjoin them from future ERISA violations;

g) surcharge against Defendants and in favor of the Plan all amounts involved in any transactions which such accounting reveals were improper, excessive and/or in violation of ERISA;

h) certify the class, appoint Plaintiff as a class representative, and appoint The Sharman Law Firm LLC as class counsel once they have been admitted *pro hac vice*;

i) award to Plaintiff and the class their attorneys' fees and costs under 29 U.S.C. § 1132(g)(1) and the common fund doctrine;

j) order the payment of interest to the extent it is allowed by law; and

k) grant other equitable or remedial relief as the Court deems appropriate.

Dated: October 31, 2024

**CREIGHTON & ROSE, PC**

*/s Beth Creighton*
BETH CREIGHTON
Oregon State Bar No. 972440
Strowbridge Bldg Suite 300
735 SW First Avenue
Portland, Oregon 97204
Email: beth@civilrightspdx.com
Phone: (503) 221-1792
Fax: (503) 223-1516


**THE SHARMAN LAW FIRM LLC**

*/s Paul J. Sharman*
PAUL J. SHARMAN (*pro hac vice* to be filed)
Georgia State Bar No. 227207
The Sharman Law Firm LLC
11175 Cicero Drive, Suite 100
Alpharetta, GA 30022
Email: paul@sharman-law.com
Phone: (678) 242-5297
Fax: (678) 802-2129